UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 03 CR 90 |
| FERNANDO DELATORRE, also known as "Fern," Fern-dog," and "Fernwood," | ) | Judge Ruben Castillo |
| BOLIVAR BENABE, also known as "Jap," | ) | |
| JUAN JUAREZ, also known as "Ghost," | ) | |
| JULIAN SALAZAR, also known as "Mando," "Comrade," "Conrad," Cuz," and "Cuzzo," | ) | |
| HAROLD CROWDER, also known as "H-Man,") | | |
| CHRISTIAN GUZMAN, also known as "Mousey," and STEVEN SUSINKA, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the government's motion to empanel an anonymous jury to hear the case against Defendants Fernando Delatorre ("Delatorre"), Bolivar Benabe ("Benabe"), Juan Juarez ("Juarez"), Julian Salazar ("Salazar"), Harold Crowder ("Crowder"), Christian Guzman ("Guzman"), and Steven Susinka ("Susinka") (collectively, "Defendants").[1] (R. 597, Gov. Mot. to Empanel Anon. Jury.) The Second Superseding Indictment ("Indictment') in this case charges Defendants with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") as members of the Insane Deuces street gang, by committing multiple narcotics offenses and violent crimes, including murder, conspiracy to commit murder, and assault with a dangerous weapon. (*See* R. 42, Indictment.) The government argues that empaneling an

---

[1] On November 21, 2007, this Court severed the trial, and these seven defendants will be tried together in this Court. *See United States v. Delatorre*, 03 cr 90, — F. Supp. 2d —, 2007 WL 4152841 (N.D. Ill. Nov. 21, 2007).

anonymous jury is necessary to protect the safety of the jurors. (R. 597, Gov. Mot. to Empanel Anon. Jury at 1.)

The decision to empanel an anonymous jury is committed to the Court's discretion. *United States v. Crockett*, 979 F.2d 1204, 1215 (7th Cir. 1992). Empaneling an anonymous jury, however, "is an extreme measure that is warranted only where 'there is strong reason to believe the jury needs protection.'" *United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002) (citing *Crockett*, 979 F.2d at 1215). "An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." *Id.* (quoting *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994)). In addition, juror anonymity deprives the defendant of information that might help him to make appropriate peremptory challenges during jury selection. *Id.*

Thus, in deciding whether to empanel an anonymous jury, the trial court must weigh the need to protect "the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict against the defendants' interest in preserving the presumption of innocence and conducting a useful *voir dire*." *United States v. Quinones*, — F.3d —, 2007 WL 4571412, at *4 (2d Cir. Dec. 28, 2007). The Seventh Circuit has held that "[f]actors bearing on the propriety of an anonymous jury include the defendant's involvement in organized crime; his participation in a group with the capacity to harm jurors; whether he previously has attempted to interfere with the judicial process; the severity of the punishment that the defendant would face if convicted; and whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment." *Mansoori*, 304 F.3d at 650-51 (citing *United States v.*

2

*Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994); *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995)). "Something more" than the organized-crime label is needed to justify juror anonymity, such as a "demonstrable history or likelihood of obstruction of justice" by the defendants or a "showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety." *Mansoori*, 304 F.3d at 651 (citing *Crockett*, 979 F.2d at 1216).

Defendants argue that pursuant to *Mansoori*, this Court should deny the government's motion to empanel an anonymous jury. (R. 639, Resp. to Mot. to Empanel Anon. Jury at 3.) The circumstances in *Mansoori*, however, are distinguishable from the instant case. In finding that the circumstances did not warrant empaneling an anonymous jury in that case, the Seventh Circuit relied heavily on the fact that "the district court made no finding that the defendants had a history of intimidating witnesses or otherwise obstructing justice or that they were likely to do so in connection with th[at] trial." *Mansoori*, 304 F.3d at 651. While "allegedly, some of the witnesses and their families had been threatened," the district court explicitly disavowed reliance on those alleged threats. *Id.* at 649.

In the instant case, by contrast, the government has alleged with sufficient particularity that the defendants have a history of intimidating witnesses or otherwise obstructing justice such that they may do so in connection with this trial. The Indictment specifically charges two acts of violence designed to interfere with the judicial process and witnesses. In Count Four, the Indictment charges Defendants Juarez and Salazar, together with severed Defendants Morales and Barbosa, with conspiring to murder Victim G, an Insane Deuces gang member whom Defendants thought was cooperating with the police. (R. 42, Indictment, Count Four at 27; R.

3

516.) The government plans to present evidence, including audio and videotape, of a series of meetings between the government's main cooperating gang member witness ("CGM-1") and the aforementioned defendants to arrange for the murder of the suspected informant, Victim G, in October and November 2002. (R. 597, Mot. to Empanel Anon. Jury at 6-8; R. 516, *Santiago* Proffer at 91-95.)[2] Contrary to Defendants' arguments, the fact that this alleged conspiracy to commit murder did not result in a "serious attempt on the cooperator's life," does not decrease the likelihood that a similar attempt to obstruct justice or intimidate witnesses or jurors may occur during trial. (R. 639, Resp. to Mot. to Empanel Anon. Jury at 5.)

In addition, Count Eight of the Indictment charges severed defendant Perez with assault with a dangerous weapon upon Victim E, in an attempt to kill CGM-1. (R. 42, Indictment, Count One ¶ 21; *id.*, Count Eight at 31.) Perez allegedly fired 29 rounds into CGM-1's parents' house when he returned to Aurora to visit his mom on Mother's Day, injuring Perez's father. (R. 516, *Santiago* Proffer at 122-24.) The fact that CGM-1's family continues to reside in Aurora and have contact with certain Defendants' families does not show that this alleged attempt to obstruct justice or intimidate witnesses did not occur, or that similar attempts would not occur at trial. (*See* R. 639, Mot. to Empanel Anon. Jury at 5.) Moreover, contrary to Defendants' arguments, the fact that the conduct alleged in the Indictment primarily occurred over a two-year period more than four years ago does not negate the Defendants' history of attempting to intimidate witnesses and obstruct justice, nor does it suggest that there are no more Insane Deuces left on the street capable of or interested in improperly influencing jurors in this case.

---

[2] The government states that Victim G in the Indictment is referred to as Cooperating Gang Member 3 ("CGM-3") in the *Santiago* Proffer.

(*Id.* at 4-5.)

These alleged crimes against potential government witnesses not only threaten the judicial process by eliminating a witness who could have provided incriminating evidence against the defendants, but also by "sending a powerfully frightening message to others of the terrible consequences awaiting anyone who cooperated in defendants' prosecution." *Quinones*, 2007 WL 4571412, at *5 (affirming district court's empaneling of anonymous jury where the indictment charged defendants with murdering a confidential informant and trial evidence showed the defendants' determination to kill him, both directly and through various confederates). Courts of Appeals have upheld trial court decisions to empanel an anonymous jury in similar circumstances. *See United States v. Crockett*, 979 F.2d 1204, 1216 (7th Cir. 1992) (evidence indicated that one potential witness had been murdered and that attempts had been made to influence or intimidate other witnesses); *see also United States v. Edmond*, 52 F.3d 1080, 1091-92 (D.C. Cir. 1995) (in addition to charges of violence against the defendants, there was some evidence of planned and attempted witness intimidation); *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (evidence of defendants' acts of intimidation towards their crime victims, including attempts to kill certain victims, and murder of individual who refused to withdraw complaints to police).

The other factors bearing on the propriety of empaneling an anonymous jury further support granting the government's motion. *See Mansoori*, 304 F.3d at 650-51. In our case, Defendants have the means of intimidation, with one charged defendant—Miguel Martinez—still a fugitive and other Insane Deuces members who have not been charged as defendants. In addition, the Indictment alleges an extensive pattern of violence beyond a "large-scale,

5

gang-related operation with ready access to firearms." *Mansoori*, 304 F.3d at 651. The Indictment and the *Santiago* proffer contain allegations of violence "unusual enough to cause jurors to fear for their safety," such as murder, attempted murder of government witnesses, and assault with a deadly weapon. *Id.* (citing *Amuso*, 21 F.3d at 1264-65). Furthermore, each defendant faces a potential life sentence. Finally, although the publicity in this case has not yet been extensive, in this Court's experience, media coverage of other similar organized crime cases in this district may become extensive once trial starts.

In granting the motion to empanel the jury, however, this Court must take "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Crockett*, 979 F.2d at 1215. This Court will use all of the tools in its powers to do so, including: (1) conducting a conscientious, "searching and thorough" *voir dire*; (2) instructing the jury during both *voir dire* and at trial that Defendants are presumed innocent and that the government bears the burden of proving them guilty beyond a reasonable doubt; and (3) instructing the jury during both *voir dire* and at trial that their their identities are being withheld for reasons other than their own safety, such as to avoid contact between jurors and the parties, and to ensure that both sides receive a fair and impartial determination of the case. *See Mansoori*, 304 F.3d at 652; *Crockett*, 979 F.2d at 1216-17. Moreover, this Court alone will instruct the jury on how to proceed anonymously, and we will accept proposed instructions from the parties in advance on this issue.

This Court does not take the matter of empaneling an anonymous jury lightly. In fourteen years of presiding over criminal trials, this is the first time that this Court has seated an anonymous jury. In reviewing other recent instances where the government has requested an

anonymous jury in a criminal case, this Court has become concerned with the routine nature with which the government has filed motions to empanel anonymous juries. *See, e.g., United States v. Salah*, No. 03 CR 978 (N.D. Ill. filed Oct. 9, 2003). This is an extreme measure that should be taken only to attempt to remedy the most serious safety issues. Nevertheless, for the reasons discussed above, this Court reluctantly concludes that this is one of the rare cases where empaneling an anonymous jury is warranted.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

Dated: January 15, 2008